**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **RICK SIMS** | § | |
| | § | |
| **V.** | § | **NO. 1:16-CV-906-LY** |
| | § | |
| **TEXAS DEPARTMENT OF HOUSING** | § | |
| **AND COMMUNITY AFFAIRS, et al.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 10); Plaintiff's Opposition to Defendants' Motion to Dismiss and Request for Reasonable Accommodation from the District Court (Dkt. No. 11); and Defendants' Reply (Dkt. No. 13). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

**I.  BACKGROUND**

Rick Sims, who is proceeding *pro se*, brings this action against the Texas Department of Housing and Community Affairs, Department Chairman Paul Oxer, and Executive Director of the Department Tim Irvine (collectively, "TDHCA"). In his Complaint, Sims alleges violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 12111, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §3605; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and the Equal Protection Clause of the Fourteenth Amendment.  This is not the first time that Sims has sued the TDHCA; two prior lawsuits addressed similar issues.  *See Sims v. Tex. Dept. of Hous. & Comty.*

*Affairs (Sims I)*, No. H-05-2842, 2005 WL 3132184 (S.D. Tex. Nov. 21, 2005); *Sims v. Tex. Dept. of Hous.& Comty. Affairs (Sims II)*, No. H-07-4511, 2008 WL 4552784 (S.D. Tex. Oct. 7, 2008).[1] However, this is the first time that Sims alleges an equal protection violation.

In 2015 and 2016, Sims applied for tax credits from the Low-Income Housing Tax Credits (LIHTC) program.  Section 42 of the Internal Revenue Code authorizes states to provide incentives to developers building low-income housing.  26 U.S.C. § 42.  In Texas, the TDHCA is designated to operate the program that distributes the LIHTC tax credits.  TEX. GOV'T CODE § 2306.053(b)(10).  TDHCA allocates two types of credits:  a 4% tax credit available year-round that is non-competitive, and a 9% tax credit that is more competitive and must provide units that are rent-restricted and occupied by low income residents.  Sims challenges only the allocation of the 9% tax credit.

To receive the benefits under the LIHTC, a state must have a "qualified allocation plan" with "selection criteria to be used to determine housing priorities of the housing credit agency which  are appropriate to local conditions."  26 U.S.C. § 42(m)(1)(B).  The Texas Government Code regulates TDHCA's administration of the program by setting out the evaluation criteria and process.  TEX. GOV'T CODE §§ 2306.6701-6710.  TDHCA relies on a point system that prioritizes "above the line" criteria, but allows for consideration of "below the line" criteria so long as the below the line points do not outweigh above the line points.  Tex. Att'y Gen. Op. No. GA-0208, 2004 WL 1434796 at *4 (2004).  The staff reviews any applications submitted pursuant to the statute and underwrites high-scoring applications to determine the "financial feasibility" of each plan.  TEX. GOV'T CODE §

---

[1]TDHCA relies heavily on the prior decisions in its motion to dismiss.  While the Rehabilitation Act claims are the same, Sims relies on different statutes for both of his FHA and ADA claims.  In the two prior lawsuits, Sims alleged violations of 42 U.S.C. § 12131 of the ADA and 42 U.S.C. § 3604(f)(1) of the FHA.  *Sims I*, 2005 WL 3132184.  Here, his claims arise from 42 U.S.C. § 12111 and 42 U.S.C. § 3605.

2306.6710(d).  The high-scoring applications are then recommended to the TDHCA Board, which issues the final commitments.  *Id.* § 2306.6724(e).

Sims applied for 9% tax credits on four applications:  three in 2015 and one in 2016.   Of these, at least one application was recommended to TDHCA's board, but ultimately was not approved.  Dkt. No. 8 at 6.  Selinsky Supportive Housing—the plan submitted in 2015 that was recommended to the board—allegedly would have provided housing for persons with disabilities. *Id.*  Sims claims that this application was the only one designated as "supportive housing" in his region that year, and that he was "the only minority major principle and the only protected characteristic" to apply that year.  *Id.*  He therefore challenges TDHCA's allocation of the LIHTC tax credits for violations of the FHA, ADA, Rehabilitation Act, and Equal Protection Clause. TDHCA moves to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.[2]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  *Pro se* complaints

---

[2]The TDHCA first asks this Court to dismiss pursuant to sovereign immunity under the Eleventh Amendment.  However, as Sims does not allege any claims that survive a Rule 12(b)(6) motion, this Court need not address this issue.  *See Groceman v. United States Department of Justice*, No. CIV.A.301CV1619G, 2002 WL 1398559 (N.D. Tex. June 26, 2002), *aff'd* 345 F.3d 411 (5th Cir. 2004) (granting dismissal on Rule 12(b)(6) rather than Rule 12(b)(1)).  Moreover, the case law in this area is not entirely clear.  In *McCardell v. United States Dept of Hous.*, 794 F.3d 510 (5th Cir. 2015), the court granted the TDHCA sovereign immunity.  *See also Sims II*, 2008 WL 4552784 at *1.  However, not all courts have granted sovereign immunity to the TDHCA.  *Inclusive Communities Proj. v. Tex. Dep't of Hous. & Comty. Affairs*, 860 F. Supp. 2d 312, 331-32 (N.D. Tex. 2012) (stating that the TDHCA was not entitled to sovereign immunity); *Tex. Dep't of Hous. & Comty. Affairs v. Verex Assur., Inc.*, 68 F.3d 922, 926-28 (5th Cir. 1995) (finding that the predecessor agency was not an arm of the state).  Lastly, TDHCA does not provide any reasoning to support its claim.

are liberally construed in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombl*y, 550 U.S. at 570). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. ANALYSIS

Sims alleges violations of the FHA, ADA, Rehabilitation Act, and Equal Protection Clause. While in the two prior lawsuits, Sims alleged similar violations, he relied on different portions of the FHA and ADA. See *Sims I*, 2005 WL 3132184 (dismissing FHA claim made under 42 U.S.C. § 3604, and ADA claim pursuant to 42 U.S.C. § 12131); *Sims II*, 2008 WL 4552784 (same). Sims's Rehabilitation Act claims remain the same as the prior cases. As in the prior lawsuits, this Court finds that Sims fails to state a claim upon which relief may be granted.

A.      **Fair Housing Act**

Sims argues that the TDHCA discriminated against him on the basis of his race and disability.  First, Sims alleges that the allocation by TDHCA racially discriminates against those applying for LIHTC tax credits.  Second, he claims that the TDHCA discriminated against him on the basis of his disabilities.

Here, Sims does not allege either a cognizable race or disability discrimination claim against the TDHCA.  Section 3605 of the FHA prohibits discrimination in "residential real estate-related transactions."  42 U.S.C. § 3605.  For a claim of discrimination under Section 3605, a plaintiff must allege that the defendant made "unavailable" because of race or disability "financial assistance for constructing dwellings."  *Inclusive Community Projects v. Tex. Dept. of Hous. & Comty. Affairs*, No. 3:08-CV-546, 2008 WL 5191935, at *3 (N.D. Tex. 2008).  TDHCA's tax credit program would likely be considered a "real estate-related transaction."  See *Texas Dept. of Hous. & Comty. Aff. v. Inclusive Community Projects*, 135 S.Ct. 2507 (2015)  (allowing a claim of disparate impact against TDHCA for the allocation of tax credits); *United States v. Mass. Indus. Finance Agency*, 910 F. Supp. 21, 28-29 (D. Mass. 1996) (finding that a tax-exempt bond qualified as "financial assistance" under Section 3605).  However, claims brought under this statute must show discrimination to prospective residents, not prospective developers.[3]  Sims relies mainly on the Supreme Court

[3]*See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (granting standing when the fair housing organization suffered monetary injuries from the defendant's discriminatory efforts against clients of the organization); *Artisan/American Corp. v. City of Alvin*, 588 F.3d 291, 295 (5th Cir. 2009) (addressing claims by a developer for disparate impact against prospective Hispanic residents); *Oti Kaga, Inc. v. S.D. Hous. Devel. Auth.*, 342 F.3d 871, 880-81 (8th Cir. 2003) (finding that a developer corporation had standing under the FHA for a claim of disparate impact when the allocation of tax credits discriminated against potential residents of a proposed building); *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 524 (S.D.N.Y. 2015) (finding that "absent allegations that the discrimination . . . was directed at prospective residents of the property, [the transaction] does

decision in *Inclusive Community Projects* for his discrimination claims, but in that case, the organization alleged discrimination against prospective tenants and buyers of real estate. *Inclusive Community Projects*, 135 S.Ct. at 2514. Here, Sims alleges he was discriminated against in his capacity as a developer applying for a tax credit. Though *Inclusive Community Projects* recognized that a disparate impact claim is possible under the FHA, Sims' reliance on this case is misplaced and provides no basis for his claim of discrimination under the FHA. Similarly, the same analysis applies to Sims's claim for discrimination on the basis of his disability.

    It is unclear whether Sims is attempting to allege that the TDHCA discriminated against the prospective residents of the supportive housing project, Selinksy. Sims notes that his application related to the Selinsky project—which would provide housing for persons with disabilities—was rejected, so this Court will take a moment to address this argument. To the extent Sims is making such a claim, he does not meet the pleading standards required. Though Sims asserts that housing at Selinsky would have been for persons with disabilities, he provides no factual pleading or other allegation that the Selinsky application was denied because it was intended as supportive housing. Nor does he allege that TDHCA's allocation of tax credits disparately impacted housing for persons with disabilities. In fact, TDHCA lists "supportive housing" as one of the three designations an applicant may make when submitting plans for consideration. The mere fact that the Selinsky project—allegedly the sole project in the region to offer a plan for supportive housing—was rejected

---

not qualify as a 'residential real estate-related transaction'"); *United States v. Mass. Indus. Finance Agency*, 910F. Supp. 21, 28-29 (D. Mass. 1996) (allowing a claim under § 3605 for the denial of a tax-exempt bond when it allegedly discriminated against handicapped students in the development of a residential school); *Inclusive Community Projects v. Town of Flower Mound*, No. 4:08-CV-433, 2009 WL 2145909 at * (E.D. Tex. July 15, 2009) (holding that ICP had alleged a sufficient indirect injury by showing that the alleged discrimination was directed at ICP's clients in finding housing for them).

is not enough evidence to raise a claim that TDHCA discriminated on this basis above the speculative level.  Therefore, Sims's claim under the FHA should be dismissed for failure to state a claim.

**B.    American with Disabilities Act**

Second, Sims' claim under the ADA also fails.  Sims alleges that the TDHCA did not provide reasonable accommodations for Sims's disability.  He references 42 U.S.C. § 12112, which prohibits discrimination in job applications and employment, but an application for LIHTC tax credits would not fit within this statute.  42 U.S.C. § 12112.  Reading his complaint liberally, at best Sims' claim would perhaps fit under 42 U.S.C. § 12132, which prohibits "exclu[sion] from participation in or [denial of] the benefits of the services, programs, or activities of a public entity."  The court need not decide whether LIHTC tax credit allocations would be a program or service to which the statute applies, as Sims has alleged no facts that would evidence a violation of this statute even assuming it did apply.  He does assert he suffers from a disability—ADD or ADHD (he references both), as well as being a recovered drug addict—but fails to provide any factual basis for a claim that TDHCA discriminated against him because of these disabilities (*e.g.,* he fails to allege that TDHCA was even aware of the alleged disabilities).  Sims claims that the TDHCA failed to provide reasonable accommodations for his disabilities and that the process of reviewing the requests is "ineffective and fraught with difficulties."  Dkt. No. 1 at 2.  He further notes that "deaf employees" are not given reasonable accommodations, but fails to show how this applies to the LIHTC tax credits or him. Sims similarly gives the court no indication what accommodations he requested or how or why the requests were "ignored as always."  Dkt. No. 8 at 6.

Moreover, as long as a person is not denied "meaningful access" to participate in or enjoy the benefits of a program, there is no ADA violation. *Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("The balance struck . . . requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers."). Sims admitted that at least one of his applications was recommended for consideration by the Board, though it ultimately was rejected. Dkt. No. 8 at 6. He makes no allegations in his complaint to suggest how his ability to apply for the tax credits was in any way impaired by TDHCA on the basis of his disabilities, and therefore has failed to plead the he was denied meaningful access to participate in the program. Sims has thus failed to state a claim under the ADA.

## C.      Rehabilitation Act

Third, Sims asserts that the tax allocations violate 29 U.S.C. § 794(a) in that the "program or activity" discriminates against Sims on the basis of his disability. This claim fails for the same reasons set forward above. This Court should therefore dismiss Sims's claim under the Rehabilitation Act as well.

## D.      Equal Protection

Lastly, Sims asserts that the TDHCA violated the Equal Protection Clause. Though the complaint is not entirely clear, Sims appears to be trying to make a disparate impact claim on the basis of race. Sims states that the LIHTC tax credit allocations "keep[] blacks as inferior and dependent to non blacks." Dkt. No. 8 at 4. He notes that the "allocation formula . . . is race neutral but has no provision for race conscienceness [sic] and is designed to only provide affordable housing for blacks as tenants but unable to have equality as non blacks as principles [sic] in the economic development of the United States in the area of housing and community development." *Id.* As Sims

8

agrees that the allocation formula is race neutral, this Court must assume that Sims contends the TDHCA's allocation of tax credits has a disparate impact on African American applicants—similar to his claim under the FHA.

However, as the TDHCA notes, the Fourteenth Amendment does not allow disparate impact claims. *Village of Arlington Heights v. Metropolitan Hous. Devel. Corp.*, 429 U.S. 252, 264-65 (1977) ("Proof of racially discriminate intent or purpose is required to show a violation of the Equal Protection Clause."). Even assuming the facts as true, statistics by themselves do not provide a basis for an Equal Protection claim. Sims does not state that there is a discriminatory intent or purpose behind the allocation, but only that by "[G]oogl[ing] the persons to determine the race if [he] is not familiar with the name," he contends the allocation of tax credits disproportionately disadvantages African American developers. Dkt. No. 8 at 5. Moreover, Sims appears to argue that the lack of "race [sic] conscienceness" in the application process violates the Equal Protection Clause. Dkt. No. 8 at 5. However, this argument misconstrues the line of cases that assess whether race conscious programs *violate* the Constitution. *See Fisher v. University of Texas at Austin*, 136 S. Ct. 2198 (216); *Grutter v. Bollinger*, 539 U.S. 306 (2003); *Regents of University of California v. Bakke*, 438 U.S. 265 (1978). Sims's Equal Protection claim therefore should be dismissed as well.

## IV.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants Texas Department of Housing and Community Affairs, Pual Oxer, and Tim Irvine's Motion to Dismiss Plaintiff's Amended Complaint, and **DISMISS WITH PREJUDICE** all claims by the Plaintiff for failure to state a claim on which relief may be granted.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 18th day of November, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE